ORIGINAL

Approved: _____
CECILIA E. VOGEL
Assistant United States Attorney

Before: THE HONORABLE KEVIN NATHANIEL FOX
United States Magistrate Judge
Southern District of New York

**18 MAG 5576**

---

UNITED STATES OF AMERICA

- v. -

JOHN LUKE SHANNON,

Defendant.

---

**SEALED COMPLAINT**

Violation of
18 U.S.C. § 1343

COUNTY OF OFFENSE: NEW YORK

SOUTHERN DISTRICT OF NEW YORK, ss.:

JOANNA E. STELNICKI, being duly sworn, deposes and says that she is a Special Agent with the United States Department of Commerce, Office of Export Enforcement ("OEE"), and charges as follows:

COUNT ONE
(Wire Fraud)

1. From at least in or about August 2017 through in or about the present, in the Southern District of New York and elsewhere, JOHN LUKE SHANNON, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, in furtherance of a scheme to keep deposits paid to SHANNON by a foreign company for the purchase of industrial tires without delivering the tires, SHANNON caused interstate emails to be sent that fraudulently represented that he was being penalized by the Treasury Department's Office of Foreign Assets Control.

(Title 18, United States Code, Section 1343.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

2. I am a Special Agent for OEE and I have been personally involved in the investigation of this matter. I base this affidavit on that personal experience, as well as on my conversations with other law enforcement agents, and my examination of various reports and records. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## The Fraudulent Scheme to Keep Deposits Paid for the Purchase of Industrial Tires

3. Since in or around March 2018, I and other law enforcement agents have been investigating JOHN LUKE SHANNON, the defendant, who engaged in a scheme to fraudulently keep deposits paid for the purchase of industrial tires, which operated in the manner described below.

4. Based on a complaint made by a foreign company (the "Victim") to a U.S. Commercial Service Export Control Officer ("Officer-1") at the United States Department of Commerce, I have learned:

   a. The Victim stated that it paid JOHN LUKE SHANNON, the defendant, the operator of Cantada Trading, LLC, to broker the purchase of large industrial tires and excavating equipment. SHANNON communicated with the Victim via the email address cantadatrading@aol.com ("Email Account-1"), among other ways.

   b. In or about mid-August 2017, an employee of a sister company of the Victim ("Witness-1"), traveled on behalf the Victim and the Victim's sister company to Lone Pine, CA to meet SHANNON in order to, among other things, determine his trustworthiness, arrange further purchases, and oversee the transfer of funds for purchases.

   c. On or about August 15, 2017, Witness-1 was physically present with SHANNON when the Victim deposited approximately $459,952 via wire transfer to Cantada Trading LLC's bank account as payment for the purchase of excavating

2

equipment, including an approximately $10,000 finder's fee to SHANNON for locating the equipment (the "First Purchase Order").

  d. On or about August 16, 2017, Witness-1 was physically present with SHANNON and saw SHANNON withdraw approximately $450,000 from the Cantada Trading LLC's bank account and deposit that approximate amount to the account of a Utah-based company. SHANNON stated he was using the Utah-based company to purchase the excavating equipment ordered by the Victim.

  e. The Victim received the excavating equipment it had purchased from Cantada Trading LLC pursuant to the First Purchase Order.

  f. On or about May 12, 2018, Witness-1 identified SHANNON when Officer-1 showed Witness-1 a photo array containing SHANNON's photograph and photographs of five other individuals.

  5. Based on my review of the Cantada Trading LLC's bank records and invoices provided by the Victim for purchases from Cantada Trading LLC, I have learned that:

  a. The invoice for the First Purchase Order is dated on or about August 14, 2017.

  b. On or about August 16, 2017, as a deposit for the purchase of industrial tires, the Victim transferred approximately $25,483 via wire transfer to Cantada Trading LLC's bank account (processed by a bank in New York, New York) (the "Second Purchase Order").

  c. On or about August 23, 2017, as a deposit for a separate purchase of different industrial tires, the Victim transferred approximately $89,353 via wire transfer to Cantada Trading LLC's bank account (processed by a bank in New York, New York) (the "Third Purchase Order").

  d. On or about August 28, 2017, as an additional deposit for the purchase of additional industrial tires of the same variety ordered in the Second Purchase Order, the Victim transferred approximately $74,353 via wire transfer to Cantada Trading LLC's bank account (processed by a bank in New York, New York) (the "Fourth Purchase Order").

  6. Based on my review of "WeChat" messages and email messages provided by the Victim and my conversations with

Officer-1, who has interviewed representatives of the Victim, I have learned that:

  a. On or about August 27, 2017, an employee of the Victim ("Witness-2") communicated with JOHN LUKE SHANNON, the defendant, on the texting application "WeChat" and had the following conversation:

 SHANNON: "Are these for Iran?"

 Witness-2: "It goes for Iran/ Burma and Kazakhstan Turkmenistan."

 […]

 SHANNON: "Ok.  As you know if I get accused of sending tires to Iran it will cause me great harm in the U.S."

 Witness-2: "I know, [the Victim] cannot do business with Iran."

 SHANNON: "Perfect."

 […]

 SHANNON: "My friend is selling to Iran at 8800 usd on 2700R49's. I just thought you should know."

 Witness-2: "We are not in business with Iran, also it is forbidden from doing business there. Our customers are dealers who buy refurbish and sell used equipments. We sell them parts and tires."

 SHANNON: "No worries with me."

  b. On or about September 2, 2017, SHANNON emailed the Victim from Email Account-1. SHANNON communicated that he was forwarding an email purportedly from the U.S. Department of Treasury, Office of Foreign Assets Control ("OFAC").

  c. The forwarded email purportedly from OFAC, dated on or about September 1, 2017 (the "September 1 OFAC Email"), was addressed to SHANNON at Email Account-1 and stated in substance and in part, that, as "an official of Cantada Trading LLC," he had "willfully violated the Economic Sanctions Enforcement Act (Iran)" and that he would be assessed penalties.

※ This is the Officer-1 account of the conversation on or about August 27th, 2017. Additionally, the Victim has stated to Officer-1 that ~~the Victim does not~~ these goods were not destined for Iran.

     d. SHANNON wrote in his email to the Victim dated on or about September 2, 2017, in substance and in part, that he was facing fines of approximately $750,000 and the loss of his import and export permits. SHANNON communicated, in sum and substance, that OFAC was penalizing him due to his business dealings with the Victim. SHANNON referenced his earlier WeChat conversation with the Victim, stating, "On the 27th of August I enquired if the tires you ordered from my company would go to Iran you responded in the affirmative." ※ SHANNON also, in sum and substance, instructed the Victim to cancel its pending purchase orders and to request the return of its deposits from the Cantada Trading LLC. SHANNON advised the Victim, in sum and substance, that he would return the deposits "as mandated by the Economic Sanctions Enforcement Guidelines, U.S. Department of Treasury and [his] attorney."

JCA 6/28/2018

     e. On or about September 3, 2017, SHANNON contacted Witness-2 via WeChat and, in sum and substance, requested documentation from the Victim stating that the tires the Victim had purchased from Cantada Trading LLC were not destined for Iran so that SHANNON could file the documentation with the U.S. Treasury Department.

     f. On or about September 4, 2017, SHANNON contacted Witness-2 via WeChat and told Witness-2, in sum and substance, that he was returning the Victim's deposit of approximately $74,400 for the Fourth Purchase Order "as a gesture to my treasury department." SHANNON stated, in sum and substance, that the other purchase orders would potentially also need to be cancelled.

     g. On or about September 5, 2017, SHANNON contacted Witness-2 via WeChat and told Witness-2, in sum and substance, that he was required to return the deposits in the order he had received them and that he was returning approximately $25,520 for the Second Purchase Order deposit. SHANNON also communicated, in sum and substance, that he wanted to keep the remaining two purchase orders open in the hope that he would be able to fill them.

     h. On or about September 7, 2017, SHANNON contacted Witness-2 via WeChat and told Witness-2, in sum and substance, that he was waiting for his "filings" to be reviewed and that there was "a chance of completing the last two orders."

     i. SHANNON later forwarded to the Victim another email purportedly from OFAC. The forwarded email purportedly

5

from OFAC, dated on or about September 22, 2017 (the "September 22 OFAC Email," collectively with the September 1 OFAC Email, the "OFAC Emails"), was addressed to SHANNON at Email Account-1 and stated in substance and in part, that "this Court and Sanctions Board" found that Cantada Trading LLC and SHANNON "personally are in violation of the Iranian Transactions and Sanctions Regulations" by "knowingly attempt[ing] to send goods (large Bridgestone and Goodyear tires) indirectly to Iran" "between on or about August 14, 2017 and on or about August 24, 2017." The September 22 OFAC Email also stated, in substance and in part, that fines and remedies were imposed and would remain in place pending any appeal.

7. Based on my review of the OFAC Emails and my conversations with officials at OFAC, I have learned that the OFAC Emails have the following discrepancies and are fraudulent:

   a. The email address format for the sender of the September 22 OFAC Email, firstname_lastname@treasury.gov, is not the email address format used for the email addresses of OFAC officials.

   b. The email address domain for the law firm carbon-copied on the September 22 OFAC Email, has an incorrect spelling and differs from the email address domain listed on the website for that law firm.

   c. Statutes cited in the September 1 OFAC Email, namely the "Economic Sanctions Enforcement Act (ESEA)" and the "Economic Enforcement Sanctions Act (EESA)," do not exist.

   d. There are multiple punctuation and grammar errors in the emails.

   e. The September 1 OFAC Email is from "Doug Chambers," but the September 22 OFAC Email is from "Ron Chambers."

   f. OFAC has never investigated Cantada Trading LLC or the Victim.

8. Based on my review of additional emails provided by the Victim between SHANNON at Email Account-1 and the Victim, I have learned the following:

   a. On or about Thursday, November 23, 2017, JOHN LUKE SHANNON, the defendant, wrote to the Victim, in substance

6

and in part, that he would "pay fines and penalties of $164,316.33 for [his] 'attempt to provide materials or services to Iran in an indirect manner.'" SHANNON informed the Victim, in sum and substance, that he would pay the fines "on Monday and then figure out how much I can send you immediately until my business is completely functional."

b. On or about November 27, 2017, SHANNON wrote to the Victim, in substance and in part, that he would "send $50,000 on 8 December. Balance will be returned by end of December."

c. On or about December 10, 2017, in response to an email from the Victim requesting, in sum and substance, the status of the payment, SHANNON wrote to the Victim, in substance and in part, that he would "update tomorrow" and that he was "waiting for [his] attorney to decide if [they were] going to file in court to recoup [his] fines and penalties from [the Victim]."

d. On or about December 11, 2017, in response to an email from the Victim, stating, in sum and substance, that the Victim may need to sue SHANNON for the return of the deposits, SHANNON wrote to the Victim, in sum and substance, "Please initiate the process. Your actions are well documented as the cause of my loss. Your ability to collect will be up to a jury here in the USA as we will be requesting a jury trial throughout."

e. In or about February 2018, the Victim and SHANNON exchanged several emails in which SHANNON wrote to the Victim, in sum and substance, that he wanted to submit a proposal regarding "a structured payback."

f. On or about May 9, 2018, Witness-1 sent an email to SHANNON stating, in sum and substance that he had been contacted by the U.S. Consulate, and he inquired about SHANNON returning deposits to the Victim.

g. On or about May 10, 2018, SHANNON replied, stating, in sum and substance, "Continue to work with the Consulate."

9. Based on my review of Cantada Trading LLC's banking records, which list Email Account-1 as the email contact, and based on conversations with Officer-1, who interviewed representatives of the Victim, I have learned that:

7

a. From on or about August 1, 2017 through on or about March 30, 2018, Cantada Trading LLC's bank account reflects no payments or withdrawals made to OFAC.

b. On or about September 5, 2017, approximately $26,000 was sent via wire transfer from Cantada Trading LLC's bank account to the Victim. Those funds were withdrawn from Cantada Trading LLC's bank account but were never received by the Victim. On or about September 20, 2017, approximately $25,965 was returned to Cantada Trading LLC's bank account as a "wire credit" with the description "ORG = OFAC return."

c. On or about September 25, 2017, approximately $9,900 was sent via wire transfer from Cantada Trading LLC's bank account to the Victim.

d. Cantada Trading LLC has not repaid the Victim approximately $179,649 of the Victim's deposits paid for the Second, Third, and Fourth Purchase Orders.

10. Based on my conversations with Officer-1, who has interviewed representatives of the Victim, I have learned that the Victim has never received the tires it purchased pursuant the Second, Third, and Fourth Purchase Orders.

11. Based on my review of subpoena returns for Email Account-1 and the mobile telephone number listed in the signature block of JOHN LUKE SHANNON, the defendant, in emails from Email Account-1 to the Victim, I have learned that:

a. SHANNON is the registered account holder for Email Account-1.

b. SHANNON is the registered account holder for the mobile telephone number in the signature block of the emails sent from Email Account-1 to the Victim.

WHEREFORE the deponent respectfully requests that a warrant be issued for the arrest of JOHN LUKE SHANNON, the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

*[signature]*
JOANNA E. STELNICKI
Special Agent
OEE, Department of Commerce

Sworn to before me this
28th day of June 2018

*[signature]*
THE HONORABLE KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

9