

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 14, 2020

**BY ECF**
The Honorable Richard J. Sullivan
United States Circuit Judge
Southern District of New York
40 Foley Square
New York, New York, 10007

     **Re:  *United States v. John Luke Shannon*, No. 18 Cr. 809 (RJS)**

Dear Judge Sullivan:

     The Government writes in response to the Court's June 10, 2020 Order directing the Government to respond to defendant John Luke Shannon's motion for compassionate release pursuant to Section 3582(c).  In light of the ongoing COVID-19 pandemic, the defendant requests compassionate release from a term of imprisonment he has not yet begun to serve.  For the reasons set forth below, the Government respectfully submits that his motion should be denied.  However, the Government recommends that the Court adjourn the defendant's surrender date in light of the defendant's current health conditions and the ongoing COVID-19 pandemic.

## Offense Conduct

     This case arises out of a series of business transactions for industrial tires and excavating equipment sold by the defendant, operating as Cantada Trading, LLC ("Cantada"), to a company based in Dubai, United Arab Emirates, that was in the business of industrial machinery (the "Victim Company").  On August 15, 2017, the Victim Company remitted approximately $459,952 to Cantada as payment for the purchase of excavating equipment, sourced by Cantada, and the Victim Company received the excavating equipment it purchased from Cantada.  (PSR ¶¶ 8-9).  The Victim Company proceeded to place three additional orders with Cantada for various types and quantities of industrial tires.  For these three orders, the Victim Company sent Cantada three down payments via wire transfer: (1) on August 16, 2017, the Victim Company sent $25,483; (2) on August 23, 2017, the Victim Company sent $85,353; and (3) on August 28, 2017, the Victim Company sent $74,353.  (PSR ¶¶ 10-12).

     The Victim Company never received the industrial tires that it had purchased from Cantada.  (PSR ¶ 28).  Instead, the defendant fraudulently represented to the Victim Company that the U.S. Department of Treasury, Office of Foreign Assets Control ("OFAC") was being penalizing him for his business deals with the Victim Company on the purported basis that his tire deals with Victim Company violated United States sanctions against Iran.  This was false;

OFAC had neither contacted nor penalized the defendant, and the industrial tires the Victim Company purchased by from Cantada were not destined for Iran.

The defendant first mentioned Iran to his counterpart at the Victim Company on August 27, 2017, via the messaging application WeChat. In that conversation, the defendant asked his counterpart if the tires were destined for Iran, and his counterpart responded that they were not. (PSR ¶ 13). On September 2, 2017, the defendant forwarded to the Victim Company an email that he had purportedly received from OFAC on September 1, 2017, stating that the defendant had violated Iranian sanctions and that OFAC would assess a financial penalty. (PSR ¶ 14). In that same September 2 email, the defendant claimed that he was facing fines of approximately $750,000 and the loss of his export and import license, that his troubles with OFAC were due to his tire deals with the Victim Company, and that he would repay the deposits paid by the Victim Company. (PSR ¶ 15). Over the course of the next several days continuing over the course of months, until May 2018, the defendant continued to represent fraudulently to the Victim Company that he was being penalized by OFAC for his deals with the Victim Company. He also made various representations that he would pay back at least some portion of the down payments or make partial delivery of the tires—and in at least one communication, he represented that the Victim Company would need to sue him for the return of its payment. (PSR ¶¶ 16-19, 22-25). On September 25, 2017, the defendant returned $9,900 to the Victim Company. (PSR ¶ 27).

## Procedural History and Sentencing

The defendant was charged by complaint on June 28, 2018, with one count of wire fraud, in violation of Title 18, United States Code, Section 1343. Law enforcement officers arrested the defendant in Arizona on July 11, 2018. (PSR ¶ 29). On November 1, 2018, the defendant waived indictment and pled guilty to the single wire fraud count charged in the Information pursuant to a plea agreement, dated September 25, 2018.

On October 18, 2019, the Court sentenced Shannon to a term of imprisonment of one year and a day, well below the Guidelines range of 21 to 27 months' imprisonment. (Dkt. 39). The defendant's health and BOP's ability to care for the defendant were litigated prior to sentencing, and all of the defendant's current diagnoses—except for autoimmune encephalitis, a post-sentencing diagnosis—were included in the Presentence Report. (PSR ¶¶ 90-93). The Court explicitly acknowledged the defendant's age and health at sentencing, noting "that a term of imprisonment imposed on you will be felt very differently than it might on somebody who's young and healthy. I think that's obvious, but it's certainly true in this case." (Sent. Tr. 21:5-7).

The Court originally ordered the defendant to surrender to the designated BOP facility by January 7, 2020. (Dkt. 39). On December 20, 2019, the Court adjourned the defendant's surrender date, at the defendant's request and with the Government's consent, to February 6, 2020, given that the defendant had yet to receive his BOP designation and given that the defendant's medical needs could interfere with his ability to make appropriate travel arrangements on short notice. (Dkt. 43). BOP subsequently notified the defendant that he was designated to FCI Butner Low in North Carolina. The Court twice more adjourned the defendant's surrender date, at the defendant's request and with the Government's consent, in light of certain medical conditions. (Dkt. 44). On March 17, 2020, the Court adjourned the

defendant's surrender date for a fourth time, at the defendant's request and on the Government's consent, to July 6, 2020, in light of the COVID-19 pandemic and the defendant's health.  (Dkt. 45).

## **Legal Standard**

Title 18, United States Code, Section 3582 states that a sentencing court "may not modify a term of imprisonment once it has been imposed" except under certain specific conditions.  As relevant here:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction [. . .] and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

The relevant Sentencing Commission policy statement is U.S.S.G. § 1B1.13.  That statement provides that the Court may reduce the term of imprisonment if "extraordinary and compelling reasons warrant the reduction," *id.* § 1B1.13(1)(A); "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," *id.* § 1B1.13(2); and "the reduction is consistent with this policy statement," *id.* § 1B1.13(3).

The Application Note describes the circumstances under which "extraordinary and compelling reasons exist":

(A) Medical Condition of the Defendant. —

(i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,

>   > (II) suffering from a serious functional or cognitive impairment, or
>   > (III) experiencing deteriorating physical or mental health because of the aging process,
>
>   that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
>   (B) Age of the Defendant. — The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
>   (C) Family circumstances. —
>
>   > (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>   > (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
>   (D) Other Reasons. — As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

*Id.* § 1B1.13, Application Note 1.

Regardless of the theory of "extraordinary and compelling reasons" under which a defendant proceeds, as noted above, the 18 U.S.C. § 3553(a) factors are relevant to whether release is warranted. *See* 18 U.S.C. § 3582; U.S.S.G. § 1B1.13.

As the proponent of release, the defendant bears the burden of proving that "extraordinary and compelling reasons" exist. *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease."); *United States v. Gotti*, No. 02 Cr. 743 (CM), --- F. Supp. 3d ---, 2020 WL 497987, at *5 (S.D.N.Y. Jan. 15, 2020) (defendant "has the burden of showing that 'extraordinary and compelling reasons' to reduce his sentence exist").

## Discussion

### A. The Motion is Not Properly Before the Court

A defendant who has not commenced his sentence of imprisonment does not have a facility from which to seek compassionate release under 18 U.S.C. § 3582. Pursuant to 18 U.S.C. § 3585(a), a "sentence to a term of imprisonment commences on the date the defendant is

received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." By its plain language, the defendant's sentence of imprisonment has not commenced because he has not voluntarily surrendered to FCI Butner Low, the facility to which he has been designated. Indeed, Judge Koeltl recently held that a request for compassionate release prior to surrender is premature and may not be considered by the Court. *See United States v. Konny*, No. 19-CR-283 (JGK), 2020 WL 2836783, at *2 (S.D.N.Y. May 30, 2020) ("Because the defendant is not currently in the custody of the BOP, his application is premature."). Judge Koeltl reasoned that "by its plain terms, the section applies only to those defendants who have begun serving their term of imprisonment at a BOP facility." *Id.* (citing *United States v. Spruill*, No. 3:18-cr-0022-10, 2020 WL 2113621, at *3 (D. Conn. May 4, 2020) (finding a motion for compassionate release premature where the motion was made before the defendant began his custodial sentence)). Accordingly, the defendant's motion is premature and should not be considered by the Court at this time.

A defendant who, like Shannon, remains at liberty following sentencing and is given a surrender date is subject to the Bail Reform Act. *See, e.g.*, *United States v. Williard*, 726 F. Supp. 590, 594 (E.D. Pa. 1989) (defendant who remained on bail after sentencing with a date to self-surrender was bailed pursuant to the Bail Reform Act and could thus be prosecuted for bail jumping), *aff'd*, 914 F.2d 245 (3d Cir. 1990). Shannon thus remains subject to the provisions of the Bail Reform Act, which governs bail pending "execution of sentence." 18 U.S.C. § 3141(b). Because he has not started serving his sentence, he cannot seek compassionate release under Section 3582(c)(1)(A).[1] Instead, Shannon may either request to adjourn his July 6 surrender date (a request he has not yet proposed to the Government or the Court) or wait until he has surrendered to BOP custody.[2]

Accordingly, because Shannon is not yet in BOP custody, the Court should deny his motion as premature.

### B. Compassionate Release is Not Warranted

In his motion, the defendant argues that compassionate release is warranted because he would be particularly susceptible to severe complications and death were he to contract COVID-19. As reflected in the Presentence Report, the defendant has been diagnosed with a number of

---

[1] The prematurity of the motion is further underscored by the fact that Shannon, by remaining on release until his July 6, 2020 voluntary surrender date, already has the relief he seeks. He can seek another adjournment prior to July 6, 2020.

[2] Once the defendant has surrendered, the defendant can then seek compassionate release through the process set out in Section 3582. The defendant may petition the warden, and then may file with this court after 30 days have elapsed. As it stands now, the warden has no ability to review the defendant's medical condition to determine if compassionate release is warranted. While defense counsel has provided the warden with a list of the defendant's medical diagnoses, the warden is entitled to review the defendant's medical condition with medical advice provided at FCI Butner Low. To permit the defendant to circumvent this administrative process upsets the careful balance struck by Congress in enacting the statutory scheme.

medical conditions. (PSR ¶¶ 90-93). In addition, since his sentencing, the defendant has been diagnosed with autoimmune encephalitis. (*See* Mot. Ex. A (Dkt. 49). But for the COVID-19 pandemic, the defendant would present no basis for compassionate release. Indeed, the Court at sentencing, taking into account the array of the defendant's medical conditions and considering the defendant's arguments that BOP was unable to provide the defendant with adequate medical care, concluded that a custodial sentence was warranted. (Sent. Tr. 21:15- 22:2).

The Government acknowledges that, if the defendant were currently in custody in the midst of the COVID-19 pandemic, the defendant's diagnoses of squamous cell carcinoma (for which he was at the time of his sentencing receiving radiation treatment), type II diabetes, and autoimmune encephalitis each present a risk factor identified by the CDC as heightening the risk of severe injury or death were the defendant to contract COVID-19. The Government agrees that these chronic conditions each present "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility," as stated in § 1B1.13, cmt. n. 1(A)(ii), in that, if the defendant were in custody, his ability to provide self-care against serious injury or death as a result of COVID-19 is substantially diminished, within the environment of a correctional facility, by the chronic conditions themselves.

Nevertheless, the same Section 3553(a) factors that informed this Court's decision to impose a term of imprisonment of twelve months and a day also counsel against compassionate release—particularly given that the defendant has yet to serve one day of his sentence of imprisonment. Over the course of many months, the defendant perpetuated an elaborate lie that his company was being penalized by OFAC because of its sale of industrial tires to the Victim Company, thereby defrauding the Victim Company of approximately $180,000 in payment for industrial tires that the defendant never delivered. As the Court noted at sentencing, the defendant has other fraud convictions that "set [him] apart," (Sent. Tr. 19:14-19), and there was a real victim in this crime, (Sent. Tr. at 20:7-9). The Court also highlighted that the fraud "was sophisticated in a sense" because the defendant used his knowledge of OFAC and the U.S. court system to defraud the victim, and that the defendant's misrepresentations about those institutions had the potential to negatively impact the reputation of the U.S. government and institutions of justice. (Sent. Tr. 20:10-21:3). To be sure, the defendant provided mitigation in support of a lower sentence, particularly his health and age. This Court, weighing that mitigation against the other Section 3553(a) factors, conferred upon him a significant benefit—a variance substantially below the Guidelines range of 21 to 27 months' imprisonment.

Ultimately, regardless of the Section 3553(a) factors, compassionate release is unwarranted because a less drastic remedy is available—adjournment of the defendant's surrender date. The defendant is not a risk of flight or danger to the community. Given the defendant's medical conditions, the continued spread of the pandemic in the United States, and the number of cases currently at FCI Butner,[3] the Government recommends that the Court

---

[3] There are currently 615 inmates and 8 staff members at FCI Butner Low who have tested positive for COVID-19; an additional 80 inmates and 8 staff members have recovered from COVID-19, while 11 inmates and 1 staff member have died from COVID-19. *See* https://www.bop.gov/coronavirus/. There are 1,157 inmates at FCI Butner Low. *See*

adjourn the defendant's surrender date for a period of months until the defendant can serve his sentence without undue risk to his health arising from COVID-19. *See United States v. Konny*, 2020 WL 2836783, at *3 (denying motion for compassionate release because defendant was not in custody but adjourning the defendant's surrender date on the basis that adjournment " will allow the Bureau of Prisons to ameliorate any potentially dangerous conditions at the place of confinement for the defendant and will better protect the defendant's health" and explaining that "the sentence will be just as effective and just as capable of accomplishing the purposes of sentencing if it is delayed for a brief period of time.").

## Conclusion

For the reasons set forth above, the Government respectfully submits that Shannon's motion should be denied and recommends that the Court adjourn the defendant's surrender date.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: *Cecilia Vogel*

Cecilia Vogel
Assistant United States Attorney
(212) 637-1084

cc: Clay Kaminsky, Esq. (by ECF)

---

https://www.bop.gov/locations/institutions/buf/. Based on information provided by the BOP, all inmates at FCI Butner Low were tested in or about the week of June 1, 2020. Inmates were subsequently separated based on test results. BOP established separate housing units for inmates who tested positive who were symptomatic, inmates who tested positive who were asymptomatic, and inmates who tested negative. All defendants who surrender to serve a sentence at FCI Butner Low are placed in quarantine for at least 14 days and tested for COVID-19 prior to release to the general population.